# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RUIZ/BROWN-MONTOYA, Minors.

UNPUBLISHED
May 12, 2016

No. 330123
Eaton Circuit Court
Family Division
LC No. 14-018980-NA

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights.[1] Because the trial court's best interests determination was not clearly erroneous and the trial court did not clearly err by terminating respondent's parental rights, we affirm.

Petitioner has five children, ranging from 3 to 8 years of age. The youngest two children are twins and both have special medical needs, involving developmental delays. As a result, the twins require various therapies, appointments, and medications. Perhaps most notably, one of the twins, LB-M, has cerebral palsy and she requires the use of a feeding tube. In addition to other medications, the twins and EB-M have breathing difficulties that require daily use of inhalers.

In June of 2014, petitioner received complaints that respondent had not been properly caring for LB-M. A petition was filed in August of 2014, alleging medical neglect involving LB-M and, more generally, petitioner made allegations involving the cleanliness of the home and the children, the children's nutrition, respondent's mental health issues, respondent's drug use, and concerns regarding domestic violence between respondent and her boyfriend. The children were removed from respondent's care and placed with respondent's mother, Theresa Brown.

The trial court assumed jurisdiction over the children. Thereafter, in addition to the concerns which prompted the initial petition, it became apparent during the pendency of this case that respondent also lacked stable housing, transportation, and employment. To address the

---

[1] The children's legal father's parental rights were terminated under MCL 712A.19b(3)(a)(*ii*) (desertion for 91 days or more). The termination of his parental rights is not at issue in this appeal.

-1-

various barriers to reunification, respondent received numerous services over the course of more than a year, including mental health services, parenting time, parenting classes, and domestic violence counseling.

In August of 2015, petitioner filed a supplemental petition, seeking termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), and (c)(*ii*). Testimony presented by petitioner at the termination hearing revealed that respondent failed to engage in, and benefit from, the services provided. For example, she failed to engage fully in counseling services, she had not been able to carry parenting skills over into a real-life setting, she did not consistently take medication prescribed for her mental health issues, and she had been unable to maintain stable housing or income. Based on the evidence presented, the trial court found statutory grounds for termination, explaining that respondent had not benefited from services and that respondent was actually in a worse position than when the case began insofar as, in addition to her other issues, she also now lacked stable employment, transportation, and adequate housing for the children. After finding statutory grounds for termination, the trial court analyzed the children's best interests, noting differences between the children when applicable, and concluded that termination was in the children's best interests. As a result, the trial court terminated respondent's parental rights. Respondent now appeals as of right.

On appeal, respondent does not challenge the trial court's conclusion that clear and convincing evidence supported statutory grounds for termination. Instead, respondent only challenges the trial court's best interests determination. Specifically, respondent asserts that the trial court erred by considering the children collectively instead of analyzing the children's best interests individually. In this respect, respondent notes potential differences between the children such as HR's strained relationship with respondent and the twins' demanding medical needs. According to respondent, had the court considered the children's needs individually, it may have determined that respondent "could care for some of the children, even if she was incapable of taking care of all five at once."

We review the trial court's best interests determination for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003). In making that determination, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). See also MCR 2.613(C).

If the trial court determines that clear and convincing evidence supports a statutory basis for the termination of parental rights, "it shall order termination of parental rights if it finds 'that termination of parental rights is in the child's best interests[.]' " *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009), quoting MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). When making a best interests determination, the trial court should weigh all available evidence. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*Id.* at 713-714 (internal quotation marks and citation omitted).]

In addition, a child's placement with relatives weighs against termination, and such a placement must be considered when determining the child's best interests. *In re Olive/Metts Minors*, 297 Mich App at 43.

Notably, the focus of the best interests determination is on the child, *In re Moss*, 301 Mich App at 88; and, "the trial court has a duty to decide the best interests of each child individually," *In re Olive/Metts*, 297 Mich App at 42 (citations omitted). In most cases, "it will be in the best interests of each child to keep brothers and sisters together;" but, "if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control." *Id.* (citation and quotation marks omitted). When the best interests of siblings "*significantly* differ," the trial court clearly errs by failing to address those differences and to consider the children's individual interests. *In re White*, 303 Mich App at 715-716 (emphasis in original). See, e.g., *In re Olive/Metts Minors*, 297 Mich App at 43-44. In contrast, if the siblings' interests do not "significantly differ," the trial court is not required to explicitly make individual and redundant factual findings regarding each child's best interests. *In re White*, 303 Mich App at 716.

In this case, the trial court prefaced its best interests analysis by expressly stating that, for the most part, the children were similarly situated by virtue of their placement with Brown, such that the trial court could not "differentiate between them as far as any of the bests interest factors, so when I speak for one I speak for all." The trial court then thoroughly examined several factors with respect to all the children, specifying when necessary those instances where the children's needs or interests differed.

In particular, first, the trial court addressed the children's bond with respondent, noting that they had "affection" for respondent, but that this bond was a "neutral" factor in the court's analysis because the children were more strongly bonded to Brown and turned to her as their caregiver. Under this factor, the trial court also expressly noted that the oldest child, HR, was somewhat different than the other children insofar as he had "been pulling back from [respondent] lately." Second, regarding respondent's parenting skills, the trial court discussed respondent's inability to provide basic necessities such as food and clothing as well as her apparent disinterest at parenting time during which she often took telephone calls rather than spend "quality time" with her children. Third, the trial court noted that, despite the provision of services, respondent had not addressed her issues with domestic violence.

Fourth, the trial court considered respondent's mental health, noting that respondent had not fully addressed her mental health problems and her lack of emotional stability. Fifth, in terms of permanency and stability, the trial court reasoned that respondent could not provide

-3-

needed stability and that the children instead looked to Brown, with whom they had lived full-time for the last 14 months and at least part-time for the majority of their lives. Under this factor, the trial court noted that the twins, even more so than the other children, were in need of permanency and stability in light of their severe medical needs, which Brown had proven capable of addressing. Sixth, the trial court addressed the children's placement with a relative, noting that this would typically weigh against termination and in favor of a guardianship, but that the "family dynamics" in this case were not conducive to continuing with an indefinite relative placement in lieu of termination because the children needed finality and stability. Seventh, the trial court addressed the importance of keeping the siblings together, finding that it was in their best interests to remain together as siblings, particularly when they were all thriving together with Brown and they looked to her "as their mother." Under this factor, given the importance of keeping the children together, the trial court rejected the suggestion that the children be separated so that the children with special needs remained with Brown while the others returned to respondent. Ultimately, given these various findings, the trial court concluded that the children's best interests were served by termination of respondent's parental rights.

Considering the trial court's analysis in light of the evidence presented, we can discern nothing clearly erroneous. The trial court plainly recognized its responsibility to consider the needs of the children individually and it was not required to set forth duplicative analysis where the needs of the children overlapped. *In re White*, 303 Mich App at 715-716. Further, contrary to respondent's argument on appeal, the trial court specifically addressed the interests of the children individually when those interests significantly differed. *Id.* These differences included those highlighted by respondent on appeal—namely, HR's strained relationship with respondent and the twins' specialized medical needs. These differences provided additional justification for the trial court's best interest determination regarding HR and the twins, while in no way undermining the trial court's best interests findings that applied to *all* the children. Overall, the trial court did not clearly err in its best interests determination. Because statutory grounds for termination existed and termination was in the children's best interests, the trial court did not clearly err by terminating respondent's parental rights. See MCL 712A.19b(5).

Affirmed.


/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray

-4-